# Order

Michigan Supreme Court
Lansing, Michigan

March 7, 2014

147581

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

ANDREW AUDIE WILLIAMS,
      Defendant-Appellant.

SC: 147581
COA: 306191
Lapeer CC: 10-010499-FC

_____/

On order of the Court, the application for leave to appeal the June 20, 2013 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MARKMAN, J. (*dissenting*).

I respectfully dissent and would grant leave to appeal in this case in which defendant has questioned the effectiveness of his trial counsel in a defense to a charge of first-degree criminal sexual conduct (CSC-I). We are presented here with a situation in which (a) counsel fully reviewed the report of the prosecutor's forensic expert regarding his medical examination of the alleged victim, (b) counsel consulted with a local physician regarding the medical findings set forth in the report, (c) counsel consulted with defendant concerning whether to retain their own expert to counter the medical findings set forth in the report and defendant agreed with counsel that this was unnecessary, and (d) counsel effectively cross-examined the forensic expert to minimize any harm done to defendant by the report. What counsel did *not* do, however, was to recognize the extent to which the report may have been of considerable potential *benefit* to defendant by evidencing that he might be innocent of the crimes for which he has now been convicted and is serving a 15- to 30-year sentence.

In 2010, defendant's granddaughter alleged that between 2001 and 2005 defendant sexually abused her on 15 occasions. These allegations led the prosecutor to charge defendant with three counts of CSC-I. The charges were based on three separate incidents in which it was alleged that defendant engaged in sexual intercourse with his granddaughter, who was between five and nine years old. The granddaughter was examined by a forensic expert, Dr. Mischa Pollard, whose report stated, *inter alia*, that her examination revealed no visible tears or transections of the victim's hymenal ring.

In preparing for trial, defense counsel read Dr. Pollard's report and consulted a local general practitioner for the purpose of determining whether anything in the report was damaging to defendant. Learning from the practitioner that "there was nothing really

damaging in [the] report by itself," defense counsel focused on other aspects of the case without further investigating or apparently recognizing that the lack of any visible tearing or transection of the hymenal ring was not simply not "really damaging" to defendant, but potentially highly exculpatory.

Defendant was eventually convicted on all three CSC-I counts. On appeal, he now argues that counsel was ineffective for failing to recognize that Dr. Pollard's report significantly supported defendant's claim of innocence, in part as a result of counsel's failure to consult with and retain his own forensic expert. To further develop this argument, a *Ginther*[1] hearing was held, and Dr. Stephen Guertin[2] testified that there is a 94% to 96% chance that a single incident of sexual intercourse with a prepubertal child would result in a tear or transection of the hymenal ring, leaving a lasting visible abnormality.[3] Given the likelihood that any *single* incident would leave such an abnormality, it follows statistically that there may have been as high as a 99.978% chance that an abnormality would result from at least one of *three* charged incidents of sexual intercourse.[4]

Following the *Ginther* hearing, the trial court denied defendant's motion for a new trial, and the Court of Appeals affirmed because it concluded that counsel's decision not

---

[1] *People v Ginther*, 390 Mich 436 (1973).

[2] Dr. Guertin is the medical director of the Sparrow Children's Center and the director of the Pediatric Intensive Care Unit at Sparrow Hospital. He is also an associate professor of pediatrics at Michigan State University. As part of his practice, Dr. Guertin "sees between 100 and 200 children per year who have been referred . . . for suspected child abuse," which often results in Dr. Guertin assisting the police and the prosecution in cases brought against individuals who have abused children.

[3] Dr. Guertin testified that the reason sexual intercourse with a prepubertal child is so likely to leave such an abnormality is because the hymen during the prepubertal stage typically has a "maximum opening" of 10 millimeters while "[t]he average penis is 35 millimeters . . . ."

[4] This latter percentage was not set forth by Dr. Guertin, but is a statistical inference drawn from his testimony. That is, if each episode of intercourse independently of the others gave rise to a 94% to 96% chance of a tear, the 99.978% percentage would seem to be an accurate figure in identifying the likelihood of a tear from at least one of these episodes. If, however, potential anatomical factors, rather than happenstance, predominately explain the absence of a tear, then the likelihood of a lasting visible abnormality might remain at 94% to 96%.

to retain and call an expert witness was "sound trial strategy" on the grounds that Dr. Pollard's testimony "did not favor the prosecution."[5]

To make out a claim of ineffective assistance of counsel, a defendant must show that (1) "his attorney's representation fell below an objective standard of reasonableness" and (2) there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . .'" *People v Toma*, 462 Mich 281, 302-303 (2000), citing *Strickland v Washington*, 466 US 668, 687 (1984), and quoting *People v Mitchell*, 454 Mich 145, 167 (1997). To provide effective assistance of counsel, defense counsel not only must consult with experts when doing so "would have revealed [the] weaknesses of the prosecution's case," *People v Trakhtenberg*, 493 Mich 38, 53 (2012), but also must consult with experts when an expert analysis, as part of the investigatory process, is likely to develop evidence favorable to the defendant, *Strickland*, 466 US at 690-691. Sound trial strategy can only be "developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486 (2004). This, in part, requires counsel to make "'an independent examination of the facts, circumstances, pleadings and laws involved . . . .'" *Id*. at 486-487, quoting *Von Moltke v Gillies*, 332 US 708, 721 (1948).

Under these standards, a court reviewing ineffective-assistance claims must evaluate those claims on a case-by-case basis. In so doing, an appellate court should look at the specific steps counsel took in light of the facts, evidence, and circumstances of the case. There is no particular "checklist" of actions that may be undertaken by counsel that will automatically immunize him from being found ineffective, but his actions as a whole and in context must be assessed. There is no "one-size fits all" investigation.

Defendant here was arguably prejudiced, and considerably so, by counsel's decision not to consult and retain an expert. Had counsel been apprised of the data set forth by Dr. Guertin, he likely would have developed a trial strategy that encompassed expert forensic testimony. Indeed, he admitted as much at the *Ginther* hearing, stating that he "obviously . . . would have used" the testimony offered by Dr. Guertin because "it certainly would [have] help[ed] [defendant's] case."

---

[5] *People v Williams*, unpublished opinion per curiam of the Court of Appeals, issued June 20, 2013 (Docket No. 306191), p 2.

For these reasons, I would grant leave to appeal to assess whether counsel here employed reasonable professional judgment. In particular, I would address the following: (1) whether counsel here satisfied his professional duty when he consulted a general practitioner rather than a forensic expert, (2) whether counsel here could effectively delegate his responsibility for identifying arguments in support of his client to a general practitioner or to any other expert, (3) whether the forensic report contained findings that an ordinary attorney would reasonably recognize as helpful to his client independently of any expert analysis, (4) whether counsel here can be deemed ineffective despite having consulted with his client and secured his agreement to the trial strategy pursued, and (5) whether counsel's performance in this case was properly reviewed by the trial court and the Court of Appeals on the basis of the specific "facts, circumstances, pleadings and laws involved."[6]

---

[6] *Grant*, 470 Mich at 486-487 (quotation marks and citation omitted).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 7, 2014



h0304

Clerk