# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT CARL GARDNER,

Defendant-Appellant.

UNPUBLISHED
October 23, 2018

No. 335066
Wayne Circuit Court
LC No. 15-009499-01-FC

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of first-degree murder, MCL 750.316, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a third habitual offender, MCL 769.11, to life imprisonment without parole for first-degree murder, two to five years' imprisonment for felon-in-possession, and a consecutive two-year sentence for felony-firearm. We affirm.

This case arises from the fatal shooting of Keon Rooks in the early hours of September 9, 2015. It is undisputed that, at the time of the shooting, defendant and the victim were socializing on the porch of a vacant house on Stout Street. Multiple witnesses testified that defendant told them that four individuals pulled up in a vehicle and started shooting the victim.

John Martin lived next to the vacant home on Stout Street and had known the victim for years. Martin testified that he was in bed when he heard gunshots and the victim yell out, "Why you doin' this? You 'sposed to be my dog." Martin then heard another gunshot. Jacqueline Collins also lived on Stout Street and testified that she heard three gunshots, the victim's voice, and then one more gunshot. Martin saw the victim lying on the sidewalk and called 911.

Lonnie Mock was also living on Stout Street on the night of the crime. He testified that he was with the victim earlier that evening when he saw defendant for the first time. Mock testified that later that night he heard defendant and the victim outside and when he looked out the window he saw defendant walking across the street with a firearm. Mock said that defendant fired the weapon into the ground. Mock testified that he heard two more gunshots minutes later,

followed by the victim saying something, and then another gunshot. None of the witnesses living on Stout Street heard the presence of a vehicle around the time of the shootings.

Alexandra Dickerson, defendant's girlfriend, testified that defendant arrived at her home between 1:00 a.m. and 3:00 a.m. and that he seemed "dazed and shocked." Dickerson said that defendant told her that Rooks had just been shot and killed. Dickerson explained that she then drove defendant to see LaVonte Darby—a friend of the victim who had been with him and defendant earlier that night—but she indicated that neither of them left the vehicle because it appeared no one was at Darby's home. In contrast, Darby testified that when he spoke to defendant the next day, defendant said that he had entered Darby's home and tried unsuccessfully to wake him.

Defendant maintained his innocence throughout two police interviews. An edited video of the interview was played for the jury. Officer David Soli testified that a shell casing was found on the porch. Officer Derrick Griffin testified that if a weapon was fired from the street, any casing would have been found in the street rather than by the porch.

Following defendant's convictions, the trial court heard testimony from defense counsel and defendant at a *Ginther*[1] hearing. Ultimately, the trial court denied defendant's motion for a new trial, finding that defendant failed to demonstrate that defense counsel's performance was ineffective.

On appeal, defendant presents numerous claims of ineffective assistance of counsel. Whether a defendant was denied the effective assistance of counsel "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "[T]he trial court must first determine the facts and then decide whether those facts demonstrate a violation of the defendant's constitutional right to the assistance of counsel." *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). This Court reviews questions of constitutional law de novo, and factual findings are reviewed for clear error. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

To establish a claim of ineffective assistance of counsel, the defendant must demonstrate that defense counsel's performance fell below an objective standard of professional reasonableness and that there is a reasonable probability that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different. *Grant*, 470 Mich at 485-486. There is a strong presumption that defense counsel's decisions constitute sound trial strategy. *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017).

Defendant first argues that defense counsel was ineffective when she did not move to suppress defendant's police statements because his statements were the product of coercion and showed defendant's "consciousness of guilt." Trial counsel is afforded wide discretion regarding "matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). "The fact that defense counsel's

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

At the *Ginther* hearing, both defendant and defense counsel agreed that, during the police interviews, defendant never confessed that he shot the victim or that he was involved in the shooting in any way. Officer Griffin testified at trial that defendant asserted his innocence even after six hours of intense questioning. Further, defense counsel reviewed the interrogation video and found that defendant was adequately advised of his rights, voluntarily waived them, and was not coerced in any way. Significantly, the interrogation video allowed defendant to place his version of events before the jury without being subject to cross-examination. While not all of defendant's statements to the police were favorable to his defense, it is apparent from the record that defense counsel's decision not to challenge the admissibility of the statements was both strategic and reasonable. Accordingly, defendant fails to overcome the presumption that defense counsel's decision not to move to suppress defendant's police statements was sound trial strategy.

Next, defendant argues that defense counsel was ineffective by failing to investigate and call Kenise Howard, a woman who lives on Stout Street, and Matthew Davidson, defendant's parole officer, as witnesses. Defendant bears the burden of establishing trial counsel's deficient performance and prejudice. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015). Additionally, the decision whether to call certain witnesses is presumed to be a matter of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Failure to call a witness at trial constitutes ineffective assistance of counsel when it deprives the defendant of a substantial defense. *Id.* "A substantial defense is one that could have affected the outcome of the trial." *Id.*

As an initial matter, it is unclear from the record when, if at all, defendant informed defense counsel about Howard or Davidson. Defendant did not provide any affidavits from Howard or Davidson to demonstrate what their respective testimony would have been, and he merely speculates as to how they might have testified. Nothing in the record suggests that Howard had any knowledge of the incident. Defendant asserts that Davidson, his parole agent, would have testified to his good behavior and would have provided an explanation for why defendant did not report the shooting to the police. But defendant has not provided any support for his position that merely reporting a shooting to the police would have constituted a parole violation. In any event, his decision to not report the crime was a minor piece of circumstantial evidence in this case. Thus, defendant fails to establish that defense counsel's decision to not investigate and call Davidson and Howard denied him a substantial defense.

Defendant next argues that defense counsel was ineffective by failing to retain an identification expert to discredit Mock's testimony and an investigator to support defendant's narrative. Whether to retain an expert witness is a "paradigmatic example" of trial strategy so long as the decision is made following trial counsel's thorough investigation. *People v Ackley*, 497 Mich 381, 390; 870 NW2d 858 (2015). Defense counsel's failure to investigate and attempt to obtain an expert witness to assist in preparing a defense may rise to the level of ineffective assistance of counsel. *People v Carll*, ___ Mich App ___; ___ NW2d ___ (2018) (Docket No. 336272); slip op at 5. However, the failure to call a witness only becomes ineffective assistance

of counsel when it deprives the defendant of a substantial defense. *Putman*, 309 Mich App at 240.

Defendant admitted that he was with the victim at the time of the shooting and no identification was needed to place him there. Further, no witness claimed to have seen the shots fired at the victim and so no evidence of visual identification of the shooter was introduced by the prosecutor. We acknowledge that Mock testified that he observed defendant fire a gun moments before the victim was shot. However, defense counsel conducted an extensive cross-examination of Mock and established that he was unable to see the actual shooter from his house. Defense counsel also attacked Mock's credibility by questioning him about his level of intoxication on the night of the shooting. At the *Ginther* hearing, defense counsel testified that she did not believe an identification expert was necessary because there were no witnesses that testified that they saw defendant shoot the victim. Instead, defense counsel made the strategic decision to focus on attacking Mock's testimony through cross-examination. This strategy does not constitute ineffective assistance of counsel simply because it did not work. *Stewart (On Remand)*, 219 Mich App at 42. Defendant has thus failed to establish that defense counsel's decision to not seek an identification expert was objectively unreasonable.

For similar reasons, defendant cannot establish that defense counsel's failure to call an identification expert prejudiced him. "A defendant is prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Carll*, ___ Mich App at ___; slip op at 5. Defendant has not provided any indication that an identification expert would have been able to offer testimony that would have changed the outcome of his trial, especially because Mock testified that he did not see who actually shot the victim.

Defendant also fails to demonstrate that defense counsel's performance was deficient for failing to retain an investigator. Defendant admitted at the *Ginther* hearing that he could only speculate that an investigator may have been able to locate a man named "Vic," whom defendant believed knew something about the shooter and may have even been the shooter. Defendant at no point presented evidence to support that theory. The same can be said for defendant's speculation regarding what Howard observed, as discussed above. In sum, it is apparent from the record that defense counsel adequately investigated the laws and facts of defendant's case and made the strategic decision to attempt to prove defendant's innocence by attacking the prosecution's witnesses and highlighting the lack of physical evidence connecting defendant to the shooting.

Defendant's final argument, that he was denied the effective assistance of counsel because defense counsel failed to plan a trial strategy with him, is unavailing. Defendant and defense counsel testified at the *Ginther* hearing that there were at least two meetings prior to trial. Defendant's and defense counsel's recollections of their meetings were consistent—first, to understand the events of September 9, 2015, and second, to review any discrepancies between defendant's narrative and the discovery packet. More importantly, the record reveals that defense counsel was prepared for trial, demonstrated an adequate knowledge of the evidence, and was fully prepared to cross-examine each of the prosecution's witnesses.

At the *Ginther* hearing, defense counsel testified that defendant was adamant that he was innocent and defense counsel crafted a defense to prove that. Defense counsel conducted an

-4-

extensive cross-examination of each of the prosecution's witnesses, focusing on the lack of physical evidence and the absence of any witnesses that could testify that they saw defendant shoot the victim. Defense counsel attacked the credibility of the prosecution's witnesses and highlighted the fact that the victim was a drug dealer. During closing arguments, defense counsel repeated all of the flaws in the prosecution's case. It is thus apparent from the record that defense counsel made the strategic decision to attempt to prove defendant's innocence through rigorous cross-examinations.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Michael F. Gadola