*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMETRI DOWDELL,

        Defendant-Appellant.

UNPUBLISHED
March 5, 2019

No. 335068
Wayne Circuit Court
LC No. 15-006696-01-FC

AFTER REMAND

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appealed as of right his jury trial convictions of carrying a concealed weapon, MCL 750.227; felon in possession of a firearm, MCL 750.224f; possession of a firearm during the commission of a felony, MCL 750.227b; and assault with a dangerous weapon, MCL 750.82. This Court found that the defendant was not denied his due process rights, but remanded the matter to the trial court "to allow defendant to expand the record to include Jason Algazzaly's affidavit, and to hold a *Ginther*[1] hearing to determine whether defendant was denied the effective assistance of counsel." *People v Dowdell*, unpublished per curiam opinion of the Court of Appeals, issued July 5, 2018 (docket no. 335068). We now affirm.

Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Grant*, 470 Mich 477, 484–85; 684 NW2d 686 (2004). A judge must first find the facts, which we review for clear error, and then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel, which we review de novo. *Id.* To demonstrate ineffective assistance of counsel, a defendant must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

A defendant "must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). Counsel's decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense and the failure to adequately investigate is considered ineffective assistance of counsel only if it undermines confidence in the trial's outcome. *Id*. "A substantial defense is one that could have affected the outcome of the trial." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

In a supplemental brief after the conclusion of remand proceedings, defendant again argues he was denied the effective assistance of counsel. Defendant contends that his trial counsel, James O'Donnell, was ineffective in failing to call Algazzaly as a witness to refute the complainant's testimony that Algazzaly was there during the incident, which would have assisted O'Donnell establish his theory at trial that the complainant was lying. Defendant further contends that O'Donnell's investigation into the matter through Algazzaly was less than complete because O'Donnell did not ask him pertinent questions that would have provided information about the video and what was contained in it. We disagree that these alleged failures on counsel's part amounted to ineffective assistance of counsel.

The pertinent facts were set forth in this Court's prior opinion and need not be repeated here. In his affidavit of June 6, 2017, which this Court ordered would be part of the record, Algazzaly swore that he is the manager of the gas station where the incident at issue in this matter occurred and that he was not present during the incident, but that his brother, Mike, was present, but is now away at school. Algazzaly further swore that he reviewed the video tape of that day and believed that the police had picked up the video tape. Algazzaly swore that there was no gun visible on defendant at any time that day and he has never seen defendant with a gun. Additionally, Algazzaly swore that defendant's "attorney never called me before trial."

In accordance with this Court's remand order, the trial court held a *Ginther* hearing on September 7, 2018. At the hearing, O'Donnell testified that he recalled that defendant was found guilty of felonious assault, carrying a concealed weapon, felon in possession of a firearm, and felony firearm, for exposing a gun to another in the course of an argument. O'Donnell testified that he filed a witness list in defendant's case, listing three witnesses, because defendant told him about three potential witnesses. He testified that he spoke to two of the witnesses but does not recall any in-person meetings with any witness, nor did he file any subpoenas in the matter.

O'Donnell testified that, to his recollection, the only person testifying that defendant had a gun was the complaining witness. He believes defendant provided him information that other people were present during the incident and his only contact for the witnesses was the gas station where the incident took place. He testified that he has notes in his file detailing that he called Algazzaly at the gas station, spoke to him on the third attempt at calling him, and that Algazzaly told him two things: that he was not there during the incident and that he turned over a surveillance video tape from the gas station to the police. While he never went to the gas station,

O'Donnell testified that he called the gas station and asked for the witnesses and the only person he was able to speak to was Algazzaly. O'Donnell testified that Algazzaly did not appear to be a witness, based on his saying he was not there during the incident.

O'Donnell testified that he is aware, from notes concerning discussions he had with the prosecutor prior to speaking with Algazzaly, that the video had not been preserved. O'Donnell testified that, had Algazzaly told him that he had reviewed the video tape, that would have been reflected in O'Donnell's notes. He never asked Algazzaly if he had viewed the video because he had met with defendant on at least two occasions prior to trial and defendant never told him that Algazzaly had seen the video.

Other than Algazzaly, O'Donnell recalls speaking to one other person who said he did not want to be involved. O'Donnell testified that if he has someone who he believes is a witness and they are uncooperative, it gives him pause in calling them as a witness, because he does not know if they will testify in a way to help his client or hurt them. O'Donnell testified that he did not call any witnesses on defendant's behalf at trial.

O'Donnell testified that his trial strategy in defendant's case was to create reasonable doubt based on the variances in the complaining witness's stories. O'Donnell recalled that during trial, the complainant testified that Jason was there when defendant showed a gun, but the complainant changed stories several times, and this may have been something he was making up.

Jason Algazzaly testified next. He acknowledged his 2017 affidavit and testified that he was not there when the incident occurred, but that his that brother Mike was present. Algazzaly testified that the day after the incident, he reviewed the surveillance video of the incident with Mike. Algazzaly testified that he viewed the confrontation between defendant and the complainant and did not see defendant with a gun, nor has he ever seen defendant with a gun. Algazzaly thought the police took the video from the gas station.

Algazzaly further testified that O'Donnell called him on the phone about the incident and asked if the police took the video. O'Donnell asked Algazzaly if he was there during the incident and he told O'Donnell that he was not but that his brother was present. According to Algazzaly, O'Donnell said he was going to come and speak to Algazzaly at the gas station but that he never came to the station. Algazzaly had no explanation why his affidavit, which he acknowledged reading and signing, stated that O'Donnell did not call him before trial when O'Donnell did, in fact, call him and speak to him.

Joshua Wiggins-Putman testified next. Wiggins-Putnam testified that defendant is his cousin. Wiggins-Putnam testified that he used to work at the gas station where the incident occurred and that he personally witnessed an incident between defendant and complainant on May 9, 2015. According to Wiggins-Putnam, the complainant walked up to defendant in the gas station that evening and defendant hit the complainant. Wiggins-Putnam testified that he did not see defendant with a gun or other weapon on the date of the incident. Wiggins-Putnam testified that he believed the incident involving defendant occurred in the evening but that if it occurred earlier, he may be confused about what incident everyone may have been referring to. He also testified that the incident he witnessed happened a couple of days after an incident between defendant and the complainant that he was not been present for, but had been told about.

Wiggins-Putnam testified that he spoke to O'Donnell over the phone. He was not certain if he spoke with O'Donnell prior to or during defendant's trial. Wiggins-Putnam testified that O'Donnell said he was going to come and see him with some paperwork, but he never did. He thinks he told O'Donnell that he was not coming to defendant's trial because he had outstanding warrants and was afraid of being arrested. According to Wiggins-Putnam, if he would have been subpoenaed, he would have appeared and testified at defendant's trial.

On November 16, 2018, the trial court delivered its oral opinion concerning the *Ginther* hearing. The court found that O'Donnell did attempt to identify and learned of potential witnesses who would be favorable to defendant. The trial court also found that O'Donnell tried to contact Mike, but that he was unavailable and/or refused to testify. The trial court stated that O'Donnell spoke to Jason Algazzaly, who told him he was not there during the incident and that he thought the police had the video. The trial court found that there was no credible testimony that Algazzaly told O'Donnell that he saw the video and what was on it, nor was there any other credible testimony that anyone else saw the video. The trial court determined that, based on the information provided to O'Donnell, he had no witnesses to call in defense of defendant, and that his trial strategy, to create reasonable doubt by exposing inconsistencies in the complainant's statements, was reasonable.

The trial court opined that O'Donnell testified very openly and was not defensive, and further, found him to be honest and credible. The trial court found Algazzaly's testimony, however, not credible, based upon the false statement in his affidavit that O'Donnell never called him before trial. The trial court also found Wiggins-Putnam's testimony not credible because he could not be sure about the time that the incident at issue occurred or whether it was, in fact, the incident at issue or another incident on a different day. The trial court thus found that defendant was not denied the effective assistance of counsel.

"[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859, amended 481 Mich 1201; 750 NW2d 165 (2008). We find no error in the trial court's conclusion that Algazzaly was not credible, given that his testimony at the *Ginther* hearing with respect to whether O'Donnell contacted him differed from his sworn affidavit. Additionally, because O'Donnell had no indication or reason to believe that Algazzaly had viewed a video of the incident, his lack of questioning Algazzaly further about the video was not unreasonable.

We also find no error with the trial court's finding that Wiggins-Putnam was not credible based on his apparent confusion over when the incident at issue took place and whether the incident he witnessed actually was the incident at issue. Further, Wiggins-Putnam clearly testified that he told O'Donnell that he was unwilling to testify at trial because he had outstanding warrants. O'Donnell's reluctance to try to force Wiggins-Putnam's appearance at trial was not unreasonable. Defendant did not establish that he was deprived of a substantial defense or that confidence in the outcome of his trial was undermined due to any action of

-4-

O'Donnell.  See, *Russell*, 297 Mich App at 716; *Putman*, 309 Mich App at 248.  We thus find that O'Donnell's actions in not calling either Algazzaly or Wiggins-Putnam as witnesses did not constitute ineffective assistance of counsel.

Affirmed.


/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro