# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CORDIS HENDERSON,

Defendant-Appellant.

UNPUBLISHED
November 20, 2014

No. 317322
Wayne Circuit Court
LC No. 12-008708-FC

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder, MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 17 months to 10 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction, and two years' imprisonment for the felony-firearm conviction. We affirm in part, but remand for resentencing or the trial court's articulation of substantial and compelling reasons justifying a sentence departing from the statutory sentencing guidelines.

I

Defendant's convictions arose from a shooting that occurred in a residential neighborhood in the city of Detroit. During the afternoon of August 26, 2012, Donald Buckhannon, his fiancé, Monique Long, and their two children were outside of their home on Beechdale Street playing with their family dog. Buckhannon and Long were videotaping the children and the dog. Long testified that, when they went inside, she placed the video camera on the front porch facing defendant's home, located at 10300 Beechdale Street, which was kitty-corner from her family's home.

After Buckhannon took a nap, he went outside to go to the store. Buckhannon testified that he and defendant exchanged words regarding the video camera facing defendant's home. Then, Buckhannon left for the store. In a 911 recording played for the jury, a caller stated that he lived at 10300 Beechdale Street, and that the neighbor across the street threatened him. The caller stated that he was physically handicapped and, "I want to get the police to come out here and see what his problem is 'for I take matters into my own hands and blow him away." Defendant admitted at trial that he called the police before the shooting.

-1-

Buckhannon, Long, and their oldest child testified that, when Buckhannon returned from the store, defendant walked down the steps of his front porch with a shotgun or long gun and walked toward Buckhannon's car. Buckhannon and Long testified that defendant began firing shots in Buckhannon's direction. Buckhannon was hit by one of the bullets that entered through the passenger side rear door of his car, which resulted in a graze wound to his right abdomen. Buckhannon was able to drive away toward a gas station. Long testified that defendant then turned toward her family's home and fired three more gunshots while Long was standing in the front doorway. The oldest child testified that, after the shooting, there was a hole in their home that had not been there before. A police officer also observed several holes in the home, but he could not testify whether they were from gunshots.

At trial, defendant testified differently about the shooting. He claimed that he was sitting on his porch and Buckhannon, from his own yard, threatened to kill defendant and burn his house down because defendant was staring at him. Defendant testified that he called the police, but he was afraid they would not arrive in time to help him. Defendant explained that he left his house with his shotgun and walked toward the family's home. Defendant saw Buckhannon reach under the seat of his car, and start to make a "motion to get a gun out," so he fired a warning shot in the air. Defendant claimed that Buckhannon kept coming at him, so defendant fired a shot at Buckhannon and returned to his house. After the shooting, when defendant talked to the police, he did not mention that Buckhannon threatened to kill him or burn his house down, or that Buckhannon had a gun.

Defendant was later arrested and charged with six counts: (1) assault with intent to commit murder on Buckhannon; (2) assault with intent to commit murder on Long; (3) assault with intent to do great bodily harm less than murder on Buckhannon; (4) assault with intent to do great bodily harm less than murder on Long; (5) discharging a firearm in or at a building; and (6) felony-firearm. The jury found defendant guilty of assault with intent to do great bodily harm less than murder on Buckhannon and felony-firearm, but acquitted defendant of the remaining charges. The recommended minimum sentencing guidelines range was 0 to 17 months, requiring the trial court to impose an intermediate sanction—"probation or any sanction, other than imprisonment" under MCL 769.31(b)—but the trial court departed from the recommendation and sentenced defendant to 17 months to 10 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction, and two years' imprisonment for the felony-firearm conviction. At sentencing, Long had testified that, as a result of defendant's actions, her youngest child wakes up every night screaming, "He got a gun," and now attends therapy. Long had further testified that the oldest child is afraid to let her younger brother out of her sight. On the record and in its written departure evaluation, the trial court ruled that it imposed a sentence outside of the recommended range due to the psychological harm defendant inflicted on the children involved in the case.

Following the verdict, defendant moved for a new trial, arguing that the prosecution failed to disclose evidence that Buckhannon had prior convictions for unarmed robbery and armed robbery and defense counsel was ineffective for failing to request this information, which defendant claimed could have been used to impeach Buckhannon. At an evidentiary hearing, defendant's trial counsel testified that he was unaware that Buckhannon was also known as, "Donal Buckhann," or that, under this alias, he was convicted of unarmed robbery in 2003 and two counts armed robbery in 1991. Defendant's trial counsel further testified that he believed

that the prosecution had a duty to produce the criminal history of its witnesses, and had he been more experienced, he would have requested the criminal history from the prosecution. Further, defendant's trial counsel testified that, if he had known about Buckhannon's prior convictions, he would have used them as impeachment evidence under MRE 609. The trial court denied defendant's motion for a new trial, ruling that it would not have allowed the prior convictions to be introduced at trial and trial counsel's performance was objectively reasonable, as evidenced by counsel's ability to successfully defend against, and obtain an acquittal for, several of the charges brought against defendant.

II

Defendant first contends that he was denied due process when the prosecution withheld critical impeachment evidence about Buckhannon's prior convictions. We disagree.

This Court reviews de novo a defendant's constitutional due process claim. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). The United States Supreme Court, in *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The components of a "true *Brady* violation" are: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014), citing *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). Our Supreme Court described the contours of the three factors as follows:

> The government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith. Evidence is favorable to the defense when it is either exculpatory or impeaching. To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.["] A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. . . ." The question is whether, in the absence of the suppressed evidence, the defendant "received a fair trial understood as a trial resulting in a verdict worthy of confidence." In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. [*Chenault*, 495 Mich at 150-151 (citations omitted.)]

"Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule because, if disclosed and used effectively, such evidence 'may make the difference between conviction and acquittal.' " *People v Lester*, 232 Mich App 262, 280-281; 591 NW2d 267 (1998), overruled on other grounds by *Chenault*, 495 Mich at 142, quoting *United States v Bagley*, 473 US 667, 676; 105 S Ct 3375; 87 L Ed 2d 481 (1985).

A prior conviction may be used to impeach a witness's credibility if the conviction satisfies the criteria set forth in MRE 609. *People v Cross,* 202 Mich App 138, 146; 508 NW2d 144 (1993). Under Michigan's reciprocal discovery rules, "a party upon request must provide all other parties . . . a description or list of criminal convictions, known to the defense attorney or prosecuting attorney, or any witness whom the party may call at trial." MCR 6.201(A)(5). However, the prosecution does not have an affirmative duty to engage in discovery on behalf of the defendant and to provide the defendant with LEIN information regarding the criminal histories of its witnesses. *People v Elkhoja,* 467 Mich 916; 658 NW2d 153 (2003) (adopting the dissenting opinion in *People v Elkhoja,* 251 Mich App 417, 452-453; 651 NW2d 408 (2002) (SAWYER, J., dissenting)).

Defendant cannot establish a due process violation on the basis of his *Brady* claim because he fails to establish that the prosecution suppressed evidence. Although defendant could have requested a description or list of Buckhannon's criminal records, MCR 6.201(A)(5), these records must have been known to the prosecution. Nothing in the record shows that anyone working on the government's behalf in this particular case was aware of Buckhannon's prior convictions. Cf *Kyles v Whitley*, 514 US 419, 437-438; 115 S Ct 1555; 131 L Ed 2d 490 (1995). Rather, Buckhannon's prior convictions were associated with an alias—"Donal Buckhann"—not his own name. Again, the prosecution was under no duty to engage in discovery that would have uncovered Buckhannon's criminal history under this undisclosed alias. *Elkhoja,* 467 Mich 916. Because defendant failed to establish that the prosecution suppressed evidence, we conclude that the trial court properly denied defendant's motion for a new trial. Since defendant did not establish that the prosecution suppressed evidence, we need not address the remaining *Brady* factors.

## III

Defendant next contends that his trial counsel was ineffective for failing to investigate and impeach Buckhannon with the prior convictions for robbery. We disagree. Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A trial court's findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id.*

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, the defendant must show that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceedings would have been different." *Id.* at 81. Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). A defendant must also overcome a strong presumption that the assistance of his counsel was sound trial strategy. *People v Sabin*, 242 Mich App 656, 659; 620 NW2d 19 (2000). Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). The

failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome. *Id.* at 493.

Notwithstanding the admitted failure by defendant's trial counsel to request the criminal records of the prosecution's witnesses or conduct an investigation into Buckhannon revealing his alias and criminal history under that alias, defendant cannot establish the requisite prejudice. The trial court ruled that Buckhannon's prior theft convictions would not have been admissible under MRE 609(a)(2)(A) and (B).[1] But even if they had been admitted, defendant cannot establish that the result of the proceedings would have been different. Contrary to defendant's claim on appeal, this case was not solely a credibility contest between Buckhannon and defendant. Instead, although Buckhannon's testimony could have been impeached, it was corroborated by the testimony of Long and their oldest child. Moreover, a reasonable trier of fact could conclude that the family's home was damaged by defendant's gunshots and that defendant's testimony lacked credibility because he told the 911 operator he was going to blow Buckhannon away and, despite his subsequent testimony at trial, he failed to report to the police any threat by Buckhannon to kill him or burn his house down. Because defendant's trial

---

[1] MRE 609 governs impeaching a witness with a prior conviction, and provides, in pertinent part:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and
>
> (1) the crime contained an element of dishonesty or false statement, or
>
> (2) the crime contained an element of theft, and
>
> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and
>
> (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.
>
> (b) Determining Probative Value and Prejudicial Effect. For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor.

counsel's performance did not fall below an objective standard of reasonableness and defendant cannot establish the outcome of the trial would have been different if the prior convictions had been admitted as impeachment evidence against Buckhannon, the trial court did not err by concluding that defendant was not denied the effective assistance of counsel.

IV

Defendant next contends that the trial court erred when it departed from the sentencing guidelines range. We agree.

This Court reviews de novo issues concerning the proper application of the statutory sentencing provisions. *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001). Statutory interpretation presents a question of law, which is also reviewed de novo. *People v Droog*, 282 Mich App 68, 70; 761 NW2d 822 (2009). In reviewing a trial court's grounds for departing from the sentencing guidelines, this Court reviews for clear error the trial court's factual finding that a particular factor in support of departure exists. *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003). However, the determination of whether the factor is objective and verifiable is a question of law that this Court reviews de novo. *Id.* Finally, this Court reviews for an abuse of discretion both the trial court's determination that the objective and verifiable factors constitute substantial and compelling reasons to depart, as well as the trial court's decision regarding the extent of the departure. *Id.* at 264-265; *People v Anderson*, 298 Mich App 178, 184; 825 NW2d 678 (2012). An abuse of discretion occurs when the trial court chooses an outcome falling outside the permissible principled range of outcomes. *Babcock*, 469 Mich at 269.

Only those factors that are objective and verifiable may be considered in determining whether substantial and compelling reasons exist. *Babcock*, 469 Mich at 257, 272. Further, "[t]he court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b).

Because the recommended minimum sentencing guidelines range was 0 to 17 months—the upper end being less than 18 months—the trial court was required to impose an intermediate sanction unless it stated on the record a substantial and compelling reason to sentence defendant to imprisonment. MCL 769.34(4)(a); MCL 769.31(b); *People v Lucey*, 287 Mich App 267, 270; 787 NW2d 133 (2010). The trial court properly concluded that the psychological injury Buckhannon's children suffered due to defendant's conduct was a substantial and compelling reason supporting a departure. This finding of the injury suffered is objective and verifiable, and in this circumstance, the offense variables failed to take this injury into account. OV 4 could not be scored because it involves the psychological injury to the victim, here Buckhannon, only. MCL 777.34. Although OV 5 considers psychological injury to a victim's family member, it can only be scored in homicide cases. MCL 777.35(1); MCL 777.22(1). Consequently, these offense variables failed to give adequate weight to the psychological injury to the victim's children.

-6-

However, while the trial court did not abuse its discretion by determining that the psychological injury to the children constituted a substantial and compelling reason to depart, defendant also argues that the trial court failed to offer justification for the extent of the departure. We agree. A departure from the guidelines range must render the sentence proportionate to the seriousness of the defendant's conduct and prior criminal history. *People v Smith*, 482 Mich 292, 300, 305; 754 NW2d 284 (2008). A trial court must justify, on the record, both the departure and the extent of its departure. *Anderson*, 298 Mich App at 184. We cannot uphold a sentence when the connection between the reasons given for departure and the extent of the departure is unclear. *Id.* at 304. "When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *Id.*

The trial court did not specifically state why its imprisonment of defendant was more proportionate than sentencing defendant within the guidelines to an intermediate sanction. We note that, if OV 5 could have been scored, defendant would have had a total OV score of 55 points, placing him in PRV Level A and OV Level V, with a minimum sentencing guidelines range of 5 to 23 months' imprisonment. MCL 777.65. The trial court's minimum sentence of 17 months fell within that range, and while it is possible to infer that the trial court found this range more appropriate than the recommended range of 0 to 17 months, we are precluded from doing so by the applicable case law. *Smith*, 482 Mich at 304; *Anderson*, 298 Mich App at 184. This Court consequently remands this matter to the trial court for resentencing or an explanation of why the sentence imposed for defendant's assault with intent to do great bodily harm less than murder conviction was more proportionate than a sentence within the guidelines recommendation would have been.

V

Last, defendant contends that the trial court erred by failing to address his objection to the PSIR. We disagree.

This Court reviews "the sentencing court's response to a claim of inaccuracies in defendant's PSIR for an abuse of discretion," *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003), and factual findings are reviewed for clear error, *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes." *People v Uphaus*, 278 Mich App 174, 181; 748 NW2d 899 (2008).

The PSIR, must, depending on the circumstances, include "a complete description of the offense and the circumstances surrounding it." MCR 6.425(A)(b). MCR 6.425(E)(2) provides:

> *Resolution of Challenges.* If any information in the presentence report is challenged, the court must allow the parties to be heard regarding the challenge, and make a finding with respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account in sentencing. If the court finds merit in the challenge or determines that it will not take the challenged information into account in sentencing, it must direct the probation officer to

-7-

(a) correct or delete the challenged information in the report, whichever is appropriate, and

(b) provide defendant's lawyer with an opportunity to review the corrected report before it is sent to the Department of Corrections.

"The sentencing court must respond to challenges to the accuracy of information in a presentence report; however, the court has wide latitude in responding to these challenges." *Spanke*, 254 Mich App at 648. In doing so, the court may determine the accuracy of the information, accept the defendant's version, or simply disregard the information challenged. *Id.* "If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record and the information must be corrected or stricken from the report." *People v Waclawski*, 286 Mich App 634, 690; 780 NW2d 321 (2009); see MCL 771.14(6). "When a sentencing court disregards information challenged as inaccurate, the court effectively determines that the information is irrelevant and the defendant is entitled to have the information stricken from the report." *Waclawski*, 286 Mich App at 690. The sentencing court's failure to strike disregarded information can be harmless error. *Id.*

The sentencing record reveals that defendant objected to the agent's description of the offense in the PSIR, which provided, "[a]fter the complainant drove off, the defendant pointed the gun at the complainant's house and fired three more shots, striking the house." Defense counsel explained that because the jury found defendant not guilty of the offenses involving defendant shooting toward the home, this description should be stricken from the PSIR. The trial court found that this is the agent's description of the offense, and left the statement in the report.

Although defendant contends that the trial court failed to adequately respond to his challenge, the record suggests that the trial court found the information to be an accurate portrayal of the agent's description of the offense. The PSIR specifically indicates that the information "was garnered from a Detroit Police Department Investigator's Report dated August 28, 2012." The fact that the jury found defendant not guilty of the offenses relating to defendant allegedly firing shots at the home was irrelevant to the agent's description of the offense and was clearly explained elsewhere in the PSIR. Accordingly, defendant failed to show that the trial court did not adequately respond to his challenge, or that it abused its discretion by leaving the statement in the PSIR.

We affirm in part, but remand for resentencing or an explanation of why the sentence imposed for defendant's assault with intent to do great bodily harm less than murder conviction was more proportionate than a sentence within the guidelines recommendation would have been. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens