# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
April 18, 2017

v

No. 330595
Midland Circuit Court
LC No. 15-006000-FH

WILLIAM JOSEPH SHERWOOD,

      Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by a jury of operating or maintaining a methamphetamine laboratory, contrary to MCL 333.7401c(2)(f). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 240 months' to 40 years' imprisonment. Defendant appeals as of right. We affirm.

## I. FACTS

On February 7, 2015, Midland Police Officer Travis Toth performed a traffic stop of a Dodge Caravan, which was registered to and being driven by Nichole Bunn, defendant's girlfriend. A short time before the stop, Toth saw Bunn drop off a man at a nearby party store. When Toth asked Bunn about the man, she eventually identified him as defendant. Toth recognized that there was an outstanding bench warrant for someone by defendant's name and called for assistance. Bunn also admitted to Toth that she had recently taken methamphetamine, so he called for the assistance of a police dog. During a search of the exterior of Bunn's vehicle, the dog alerted for the presence of narcotics. With Bunn's consent, officers then searched the interior of her vehicle and found items typically associated with methamphetamine production.

Back at the party store, officers found footprints leading to a nearby apartment complex. Central dispatch had advised the officers that a suspicious subject was seen entering apartment number five, but officers noticed an open window and more footprints leading away from the apartment, suggesting that the subject might have already left through the window. The police dog tracked the footprints from the party store to the apartment complex and alerted for the presence of human odor at the door of apartment number five. After an officer knocked, Corey Parker answered the door and gave the officers verbal consent to enter and search the apartment. Defendant was not in the apartment, but officers found a woman, Amanda Iafrate, intoxicated in a bedroom. Officers discovered that a large section of paneling had been peeled away from a bathroom wall in the apartment, revealing a cavity that contained a plastic bottle that had liquid

-1-

inside, bubbles along the side, and burnt metallic strips on top. Officers also found other items associated with methamphetamine production during the search. Detective Jair Kollasch, who was qualified as an expert in methamphetamine identification, testified that the items found in the apartment suggested that someone was manufacturing methamphetamine using a "one-pot method" and that the apartment was being used as a clandestine methamphetamine laboratory.

During a subsequent investigation, the police reviewed several NPLEx logs, which stores use to record pseudoephedrine purchases. The logs showed that defendant used an account with an incorrect birth date to purchase pseudoephedrine on February 4, 2015, and seven earlier dates, and that defendant used a different account to purchase pseudoephedrine on January 10, 2015. An NPLEx log for Iafrate showed that she purchased pseudoephedrine on February 6 and February 7, 2015. At trial, Iafrate testified that she met defendant for the first time on February 6, 2015, at Parker's apartment. She explained, "We went to Walgreen's and purchased Sudafed" using Bunn's vehicle. Although Iafrate could not remember who all went to the store with her, she testified that she "turned over" the pseudoephedrine to defendant when they returned to the apartment. Iafrate testified that defendant was "the main one making" the methamphetamine, elaborating that he "got the ingredients together and shook it and stuff," that Parker "helped," and that she saw the two of them shaking a clear bottle. Iafrate then explained that Parker and defendant used a needle to inject methamphetamine into her arm.

On February 9, 2015, the police recorded an interview of defendant, which was played for the jury. During the interview, defendant admitted that he purchased pseudoephedrine and other items used to make methamphetamine, that he was trying to figure out how to produce the drug to minimize his drug costs, and that he was in the apartment when methamphetamine was being made. Defendant maintained, however, that he did not know how to make methamphetamine and he did not make it in Parker's apartment. He said he knew the steps had to be in a certain order to prevent an explosion, and he agreed that "everyone was shaking" the bottle after Parker brought it out, but argued that this did not mean he knew what was in it.

## II. EVIDENTIARY ISSUES

On appeal, defendant first argues that the trial court improperly admitted Toth's testimony that Bunn told him defendant was the man she dropped off at the party store on February 7, 2015. Defendant also argues that the trial court improperly admitted Detective Mark Stefaniak's testimony that Bunn told him she did not purchase pseudoephedrine after July 2014 because she had an expired driver's license. Defendant objected to Stefaniak's testimony at trial on the ground that it was inadmissible hearsay, but did not object to Toth's statement, rendering his claim regarding that statement unpreserved on appeal. See *People v Considine*, 196 Mich App 160, 162; 492 NW2d 465 (1992).

We review a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217. However, even if a trial court improperly admits evidence, under Michigan's harmless error statute, we will not set aside a judgment or verdict unless it affirmatively appears that the error resulted in a miscarriage of justice. MCL 769.26. A

-2-

miscarriage of justice only occurs if it appears more probable than not that the error was outcome determinative. *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

We review unpreserved claims of evidentiary error for plain error affecting substantial rights. *People v Osby*, 291 Mich App 412, 414; 804 NW2d 903 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if these three requirements are met, a defendant is not entitled to reversal unless he or she was actually innocent or if the error seriously affected the integrity, fairness, or public reputation of the judicial proceedings independent of the defendant's guilt or innocence. *Id.*

"An extrajudicial statement offered into evidence to prove the truth of the matter asserted is hearsay." *People v Eady*, 409 Mich 356, 360; 294 NW2d 202 (1980), citing MRE 801(c). Hearsay is not admissible at trial except as provided by the rules of evidence. *Eady*, 409 Mich at 361, citing MRE 802.

Defendant did not object to Toth's testimony that Bunn told him defendant was the man she dropped off at the party store, so the prosecutor did not explain his rationale regarding the admissibility of the statement. The prosecutor may have elicited the testimony to provide a context for why the police began searching for defendant, not to prove that it was in fact defendant who got out of Bunn's vehicle. Accordingly, defendant has not shown any plain error regarding the admission of this testimony at trial.

Regarding Stefaniak's testimony, there was no evidence that Bunn had recently purchased pseudoephedrine. At trial, the prosecutor asked Stefaniak whether Bunn had told him why there were not purchases after a given date. The trial court overruled an objection by defense counsel, concluding that Bunn's statement was admissible as a statement against penal interest. See MRE 804(b)(3). Stefaniak then indicated that Bunn's license had expired and that an individual could not purchase pseudoephedrine with an expired license.

MRE 804(b)(3) provides that a statement otherwise precluded by MRE 802 is admissible if the declarant is unavailable as a witness and the statement "was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Bunn's statement that she had not purchased pseudoephedrine since July 2014 because she had an expired driver's license was arguably against her penal interest because it implied that she had purchased pseudoephedrine before that date and that she had been driving without a valid license at the time of the traffic stop. Nonetheless, the statement was not admissible under MRE 804(b)(3) because Bunn was available as a witness. At trial, the prosecutor explicitly acknowledged that Bunn was available to testify, indicating that he had not decided whether to call her and that defendant had "every ability" to call her as a witness. Therefore, the trial court abused its discretion by admitting Stefaniak's testimony about Bunn's statement under MRE 804(b)(3). However, the error was harmless. Whether Bunn did previously or could purchase pseudoephedrine and whether she was driving with an expired license is irrelevant to whether defendant operated or maintained a methamphetamine laboratory. Although the trial court improperly admitted the testimony as a

statement against interest, it is not more probable than not that the jury would have acquitted defendant if the court had excluded the evidence.

Defendant next argues that the trial court erred by admitting several photographs, which depicted certain items found during the search of Parker's apartment. Detective Kollasch testified that the items shown in the photographs were given to him at a staging area outside of the apartment following the search. However, the photographs were taken inside the apartment. Defendant argues that the photographs were not properly authenticated because Kollasch did not take the photographs and did not view the objects in the apartment where the photographs were taken. We disagree.

A condition precedent to the admissibility of evidence at trial is authentication or identification that is sufficient to support a finding that the item in question is what its proponent claims. See MRE 901(a). Testimony from a witness with knowledge that a matter is what it is claimed to be is sufficient to authenticate evidence for trial. MRE 901(b)(1); see also *People v McDade*, 301 Mich App 343, 353; 836 NW2d 266 (2013). At trial, Kollasch testified only that the items in the photographs were brought to him after the search; he did not testify that the officers found the objects in the places where they were photographed, and the prosecutor did not offer the photographs for that purpose. Kollasch had personal knowledge that the items depicted in the photographs were given to him after the search, so the authentication was sufficient. To the extent the jury could have been misled to believe that the photographs were being offered to prove the items were actually found in the locations where they were photographed, the trial court properly informed defense counsel that he could cross-examine Kollasch to clarify the matter. Under the circumstances, defendant has not shown that the trial court abused its discretion by admitting the photographs.

## III. JURY INSTRUCTIONS AND INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that the trial court erred by failing to instruct the jury, consistent with M Crim JI 5.5 and M Crim JI 5.6, that it should cautiously consider Iafrate's testimony and Bunn's statements because the women were defendant's possible accomplices. M Crim JI 5.5 provides the following:

> (1) Before you may consider what [*name witness*] said in court, you must decide whether [he / she] took part in the crime the defendant is charged with committing. [*Name witness*] has not admitted taking part in the crime, but there is evidence that could lead you to think that [he / she] did.

> (2) A person who knowingly and willingly helps or cooperates with someone else in committing a crime is called an accomplice.

> (3) When you think about [*name witness*]'s testimony, first decide if [he / she] was an accomplice. If, after thinking about all the evidence, you decide that [he / she] did not take part in this crime, judge [his / her] testimony as you judge that of any other witness. But, if you decide that [*name witness*] was an accomplice, then you must consider [his / her] testimony [as provided by the cautionary instruction regarding accomplice testimony in M Crim JI 5.6.]

-4-

M Crim JI 5.6 then states the following:

> (1) You should examine an accomplice's testimony closely and be very careful about accepting it.

> (2) You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

> (3) When you decide whether you believe an accomplice, consider the following:

> (a) Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

> (b) Has the accomplice been offered a reward or been promised anything that might lead [him / her] to give false testimony? [*State what the evidence has shown. Enumerate or define reward.*]

> (c) Has the accomplice been promised that [he / she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his / her] testimony?

> [(d) Does the accomplice have a criminal record?][1]

> (4) In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.

Defendant further argues that the trial court should have provided a tracking-dog instruction sua sponte, consistent with M Crim JI 4.14, given the facts of the case. M Crim JI 4.14 states the following:

> You have heard testimony about the use of a tracking-dog. You must consider tracking-dog evidence with great care and remember that it has little value as proof. Even if you decide that it is reliable, you must not convict the defendant based only on tracking-dog evidence. There must be other evidence that the defendant is guilty.

---

[1] The use note for M Crim JI 5.6 states that the trial court should "[u]se bracketed material as applicable."

At trial, not only did defendant fail to object to the trial court's instructions, he specifically affirmed the trial court's set of jury instructions in its entirety. By expressly approving the jury instructions on the record, "defendant waived any objection to the erroneous instructions, and there is no error to review." *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).[2]

Alternatively, defendant asserts that his attorney's failure to request these instructions constituted ineffective assistance. Whether a defendant has been denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). Appellate courts review a trial court's findings of fact for clear error and review constitutional questions de novo. *Id.* at 484-485.

To establish a claim of ineffective assistance, a defendant bears the burden of proving that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). In establishing the first prong, a defendant must overcome the strong presumption that counsel's conduct constituted sound trial strategy. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). We will not second-guess counsel on matters of trial strategy, nor will we assess counsel's actions with the benefit of hindsight. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Bunn did not testify at trial, so there would have been no basis for defense counsel to request the instructions of M Crim JI 5.5 and M Crim JI 5.6 relative to her. However, the evidence supports that Iafrate could be considered an accomplice, such that the trial court would

---

[2] We note that Bunn did not testify at trial, so there was no reason to provide the instructions of M Crim JI 5.5 and M Crim JI 5.6 relative to her. Further, Iafrate appeared at trial wearing an orange jail uniform and affirmed that she was "currently in jail." The trial court admitted, without objection, a "true copy of the Order of Immunity," which Iafrate said she understood to mean that "anything [she] sa[id] c[ould ]not be used against [her] in any future prosecutions." The trial court also instructed the jury as follows regarding Iafrate's testimony:

> You have heard testimony that a witness, Amanda Iafrate, made an agreement with the Prosecutor about charges against her in exchange for her testimony in the trial.

> You are to consider this evidence only as it relates to Amanda Iafrate's credibility and as it may tend to show Amanda Iafrate's bias or self-interest.

Given these facts, the jury already had ample reason to cautiously evaluate Iafrate's testimony, and the court's failure to give the jury the accomplice instruction cannot be said to have unfairly prejudiced defendant.

have been required to give the cautionary accomplice instruction regarding her testimony upon request. See *People v McGhee*, 268 Mich App 600, 608; 709 NW2d 595 (2005) (explaining that a cautionary instruction on accomplice testimony is only required upon request if it is supported by the evidence). Nonetheless, defendant cannot establish the second prong of his ineffective assistance claim. Iafrate testified that she "turned over" pseudoephedrine to defendant after purchasing the drug at Walgreen's, and said that defendant was "the main one making" the methamphetamine and "got the ingredients together and shook it and stuff." She stated that Parker "helped" and that she saw the two of them shaking a clear bottle. Although Iafrate's testimony differed from defendant's description of events during his police interview by depicting him as the chief cook, defendant nonetheless implicated himself during the recorded interview. He stated that everyone shook the bottle, indicating that everyone was involved in operating the methamphetamine lab. He also acknowledged that he purchased pseudoephedrine. Therefore, even if the trial court gave the cautionary instruction and the jury discredited Iafrate's testimony, defendant cannot show with a reasonable probability that this would have affected the outcome of the trial.

Defendant also cannot establish the second prong of his ineffective assistance claim with regard to the tracking-dog instruction of M Crim JI 4.14. In this case, the police dog followed footprints to Parker's apartment, but the police did not apprehend defendant there. Rather, it was Bunn's identification and the outstanding warrant that led to defendant's arrest, and other trial testimony and defendant's own confession then linked him to Parker's apartment. The tracking-dog evidence was not essential to the case, and defendant cannot show with a reasonable probability that any instruction by the trial court limiting the value of the evidence would have affected the outcome of the trial. Accordingly, defendant has not established that his trial counsel was constitutionally ineffective.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Michael F. Gadola