# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BRIAN CHRISTOPHER PATRICK,

      Defendant-Appellant.

UNPUBLISHED
April 10, 2018

No. 332128
Macomb Circuit Court
LC No. 2014-004084-FC

---

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant, Brian Christopher Patrick, appeals as of right his jury trial conviction for first-degree criminal sexual conduct, MCL 750.520b(1)(a) (sexual penetration of a person under 13 years of age). Patrick was sentenced to 25 to 50 years' imprisonment. Patrick argues on appeal that he was denied effective assistance of counsel because trial counsel (1) failed to call an appropriate expert witness, (2) failed to object to inadmissible hearsay, and (3) failed to impeach the testimony of two key witnesses. We affirm.

## I. BACKGROUND

In the summer of 2014, KK and her two children, SK and JK, moved into Patrick's home. SK was five years old. One day, SK went into Patrick's bedroom looking for KK but found Patrick alone. Patrick then penetrated SK's vagina with his fingers. SK first reported this incident to Patrick's neighbor, Doris Heath. SK told her mother about it later that day, and KK reported the incident to the police the next day. SK later attended a forensic interview with Nicole King. At trial, defense counsel proffered Dr. Ross Beckley as an expert witness in the area of forensic evaluations in order to call into question the reliability of the forensic interview. The prosecution presented Davida Pace as an expert to rebut Dr. Beckley's testimony. At the conclusion of trial, the jury found Patrick guilty of first-degree criminal sexual conduct.

The trial court subsequently held a *Ginther*[1] hearing on Patrick's claim of ineffective assistance of counsel. Patrick argued that his trial counsel, Susan Dunn and Mark Nortley, were

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

ineffective for failing to call a knowledgeable expert witness, failing to object to hearsay testimony, and failing to impeach key witnesses. Patrick produced an affidavit from Dr. Katherine Jacobs stating that Patrick's first attorney, David Moffitt, retained Dr. Jacobs and that she was willing and able to testify as an expert on Patrick's behalf. Timothy Barkovic replaced Moffitt as Patrick's attorney, and Patrick's trial attorneys, Dunn and Nortley, took over the case from Barkovic shortly before trial. After hearing testimony from Dunn and Nortley about their representation, the trial court rejected Patrick's ineffective assistance of counsel claim.

## II. ANALYSIS

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). We review constitutional determinations de novo and factual findings for clear error. *Id*. "Clear error exists where the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Callon*, 256 Mich App 312, 321; 662 NW2d 501 (2003). This Court defers to the trial court's evaluation of a witness's credibility. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*Lockett*, 295 Mich App at 187 (citations omitted).]

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). " '[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation . . . . [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), quoting *Strickland v Washington*, 466 US 668, 690-691; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (alterations in original). Sound trial strategy follows from "an investigation that is adequately supported by reasonable professional judgments." *Grant*, 470 Mich at 486.

## A. EXPERT WITNESS

Patrick challenges trial counsel's use of Dr. Beckley as the defense's expert witness. Patrick argues that Dunn's investigation into Dr. Beckley's expertise was deficient. Patrick further argues that trial counsel were ineffective for failing to contact Dr. Jacobs, whom Patrick alleged had already been retained for his defense. We disagree.

When there is no direct evidence, expert testimony becomes essential. *People v Ackley*, 497 Mich 381, 384; 870 NW2d 858 (2015). In *Ackley*, 497 Mich at 384, 389-394, the defense's failure to call an expert witness to respond to the prosecution's introduction of five medical experts at trial constituted ineffective assistance of counsel. Similarly, in *People v Trakhtenberg*, 493 Mich 38, 47, 52-53; 826 NW2d 136 (2012), defense counsel conducted virtually no investigation in preparing her defense. These deficiencies are not present in this case.

Rather, in this case, trial counsel investigated potential expert witnesses and confirmed with the defense's chosen expert, Dr. Beckley, that he was knowledgeable in the relevant topics. Dunn and Nortley both testified that no one, including Patrick, told them that Dr. Jacobs was retained. Had Dunn known, she would have immediately contacted Dr. Jacobs. Dunn testified that she talked with Barkovic, who replaced Moffitt. Barkovic said little, if anything, about Moffitt's work on the case. Dunn stated her impression that Moffitt had limited participation in the case and that Patrick hated Moffitt. Accordingly, Dunn's decision not to contact Moffitt was reasonable in light of what little information she learned about Moffitt.

When Dunn took over the case from Barkovic, he gave Dunn a box full of materials in which Dunn found Dr. Jacob's curriculum vitae but no indication that Dr. Jacobs was retained. Dunn consulted other potential expert witnesses, but they were unavailable. She also asked colleagues who specialized in criminal sexual conduct cases about the selection of an expert, and they told her that Dr. Jacobs did not work for court-appointed fees. Dunn chose Dr. Beckley because she had worked with him before; he told her that he was familiar with forensic interviewing, and he demonstrated knowledge of taint and suggestibility with respect to the reliability of the testimony of children. Dunn's decision to proceed with Dr. Beckley instead of contacting Dr. Jacobs was based upon her reasonable, professional judgment after investigating expert witnesses, and she reasonably believed that Dr. Jacobs would not testify for a court-appointed fee. Dr. Beckley's failure to testify satisfactorily about the topics of which he claimed to have knowledge and experience does not render Dunn's investigation unreasonably deficient. Accordingly, Patrick has not shown that trial counsel's performance fell below an objective standard of reasonableness.

## B. HEARSAY

Patrick contends that his trial counsel was ineffective for failing to object to the testimony of three witnesses about statements made by SK as inadmissible hearsay under MRE 803A.

MRE 803A provides:

A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant. [MRE 803A.]

"MRE 803A generally requires the declarant-victim to initiate the *subject of sexual abuse*. The question of spontaneity, at its essence, asks whether the statement is the creation of the child or another." *People v Gursky*, 486 Mich 596, 613; 786 NW2d 579 (2010). Statements may be spontaneous if they "arise out of pure impulse[,]"they "are made as a result of prompt, plan, or questioning by a third party, yet are in some manner atypical, unexpected, or do not logically follow from the prompt[,]" or they follow from "open-ended and nonleading questions that include answers or information outside the scope of the questions themselves." *Id*. at 610-611. Questioning the child does not render the child's answers nonspontaneous. *Id*. at 614. "However, for such statements to be admissible, the child must broach the subject of sexual abuse, and any questioning or prompts from adults must be nonleading or open-ended in order for the statement to be considered the creation of the child." *Id*.

Patrick first argues that the bulk of Heath's testimony about the statements SK made were inadmissible hearsay because those statements were not spontaneous and did not corroborate SK's trial testimony. After SK spontaneously told Heath that Patrick "touched [her] private[,]" Heath asked SK several questions, beginning with how Patrick touched her. Heath testified that SK answered that Patrick placed his finger inside "her private and rubbed it up and down and side to side." Heath then asked additional questions, including whether SK saw Patrick's "private," whether SK touched defendant's "private," and whether anything came out of defendant's "private." SK answered all of the questions affirmatively in direct contradiction to SK's prior testimony at trial answering the same questions in the negative. Heath's testimony about SK's initial, voluntary statement reporting the touching was undoubtedly spontaneous. Heath's follow-up question about how Patrick touched her was sufficiently open-ended for SK's answer to be spontaneous, and SK's answer matched her trial testimony that Patrick placed and moved his fingers inside her vagina. Heath's questions became more pointed and elicited answers that contradicted, rather than corroborated, SK's trial testimony. Accordingly, these statements were inadmissible. Nonetheless, trial counsel's not objecting to Heath's testimony and leaving these contradictions on the record furthered trial counsel's strategy of showing that SK's testimony was neither credible nor reliable.

Similarly, Nortley's choice to introduce additional hearsay statements during the cross-examination of the prosecution's witnesses, Nicole King and Davida Pace, furthered this strategy. During cross-examination, Nortley introduced out-of-court statements by SK that Patrick had "cake in his pants" and that he "peed and flooded the whole house." Nortley testified at the *Ginther* hearing that he asked about these fantastical statements to highlight King's failure to clarify these statements at the forensic interview. Thus, Nortley was attempting to impeach the credibility of SK's allegations. Accordingly, we agree with the trial court that trial counsel's choices not to object to Heath's hearsay testimony and to introduce hearsay during the cross-examination of the prosecution's witnesses constituted a sound, strategic attempt to question the reliability of SK's allegations and the forensic evaluation.

-4-

## C. IMPEACHMENT

Finally, Patrick contends that his counsel was ineffective for failing to impeach SK and KK with their preliminary examination testimony. We disagree.

Patrick argues that SK contradicted her preliminary examination testimony when she testified at trial that the sexual assault stopped when SK "ran out of the room." At the preliminary examination, however, SK testified that the touching stopped because her mother was home. Nortley testified that he did not impeach SK with the preliminary examination testimony because he did not believe the jury would have looked favorably on an attempt to impeach a young girl. In addition, Nortley was able to call into question the reliability of SK's testimony when she later admitted on cross-examination that she did not really remember what happened that summer. The pertinent element was digital penetration. Exactly when and how the penetration stopped is irrelevant to the charge of sexual conduct. Therefore, Nortley's decision not to question a seven-year-old witness about when and how the penetration stopped constituted sound trial strategy.

Patrick similarly argues that counsel failed to impeach KK with her preliminary examination testimony related to SK's bed-wetting. At trial, KK testified that SK had occasional problems wetting the bed prior to moving in to Patrick's home, but SK began wetting herself during the day, which was unusual, after moving in to Patrick's home. KK further testified that SK's accidents decreased about two weeks after moving out of Patrick's home. At the preliminary examination, SK testified that KK stopped wetting herself about two weeks after they left Patrick's home but restarted when SK returned to her father's home about one month after they left Patrick's home. Patrick further argues that KK's testimony was contradictory because SK was living with KK's sister, while KK lived in a homeless shelter, before they moved in to Patrick's home. Therefore, Patrick maintains, KK did not have personal knowledge of SK's bedwetting before they lived in Patrick's home.

We see no contradiction between KK's trial testimony and her preliminary examination testimony. The only difference regarding the timeline of when SK's bedwetting increased and decreased arises from KK's more fulsome testimony at the preliminary examination that SK started wetting her bed again when she returned to her father's house. Testifying in greater detail about events weeks after the assault is not a contradiction. Similarly, KK's residence in a homeless shelter does not equate to Patrick's assumption that KK did not know about SK's pattern of bedwetting before they lived in Patrick's home. Moreover, even assuming that any discrepancy was worth impeachment, Patrick has failed to show a reasonable likelihood that impeaching KK's testimony about SK's bedwetting might have altered the outcome of the trial.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell

-5-