*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL KEVIN JACKSON,

Defendant-Appellant.

UNPUBLISHED
April 30, 2020

No. 345912
Muskegon Circuit Court
LC No. 18-001659-FH

Before: MARKEY, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of assault with a dangerous weapon (felonious assault), MCL 750.82, and commission of a felony while armed with a firearm (felony-firearm), MCL 750.227b. The trial court sentenced defendant to a prison term of 5 months to 4 years for the felonious assault conviction, with credit for 16 days, to be served following a two-year prison sentence for the felony-firearm conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was arrested after he struck his wife (TJ) several times during an argument, drew a firearm, pointed it at TJ, and threatened to shoot her. Defendant claimed that TJ had assaulted him, that he acted in self-defense, and that the firearm fell out of his waistband. According to defendant, he was only carrying the firearm because he had been teaching his grandson how to clean and maintain it.

At trial, defendant, TJ, and TJ's daughter all testified that an argument between defendant and TJ had escalated into a physical confrontation, and that defendant possessed a pistol during the incident. TJ and her daughter testified that defendant was furious with TJ and shoved her violently into the kitchen counter, after which they separated for a short time. When defendant confronted TJ again, he had his pistol in his hand. Both witnesses testified that defendant declared that he would shoot TJ. TJ was able to surreptitiously dial 911 and the police eventually arrived and arrested defendant. TJ also testified that defendant had physically assaulted her "five to seven times" in the past, and that his assaults had grown "more common" over time.

-1-

Defendant testified to a different version of events. He maintained that TJ had picked a fight with him and eventually charged at him. After wrestling for some time, defendant's pistol fell out of his waistband. Defendant testified that he caught the gun in his hand as it fell and only fought with TJ because he was worried that she might accidentally pull the trigger. He denied saying that he would shoot TJ or that he had pointed the gun at her.

On the morning of the first day of trial, defendant objected to the jury venire, arguing that, based on a visual inspection, there was only one person of color out of approximately 40 potential jurors. Defense counsel argued that a new jury venire was required, particularly in light of the fact that defendant was African-American and TJ was Caucasian. The prosecution left the decision to the trial court's discretion without argument.

The trial court acknowledged that the jury venire contained a roughly "1 to 40" ratio of African-Americans to Caucasian jurors, and stated that previous jury venires in the county had been much more diverse and that this jury venire appeared to be an aberration. The trial court thus recognized that there was an underrepresentation of African-Americans in the current jury venire. However, it explained the county's jury selection procedures for the record, noting that a three-person jury commission randomly selected names from a large, non-discriminatory, neutral population base obtained from the Secretary of State's driver's license and state identification records. Because defendant had failed to present any evidence that the underrepresentation of African-Americans stemmed from a systematic exclusion, rather than resulting simply from random selection, the trial court found that defendant had failed to establish a prima facie violation of the Sixth Amendment.

The jury convicted defendant as described. This appeal followed. Defendant moved this Court to remand for a *Ginther*[1] hearing on the issue of his trial counsel's alleged ineffectiveness; this Court denied his motion without prejudice to this panel concluding that remand is warranted after plenary review.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for failing to investigate and call as a witness defendant's 28-year-old grandson, Corey Lamont Jackson, to corroborate defendant's explanation of why he was carrying his pistol that day. We disagree.

A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. We review a trial court's factual findings for clear error, and the ultimate constitutional issue de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Because no *Ginther* hearing was held, our review is limited to the existing record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). However, in the context of determining whether remand for a *Ginther*

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] See *People v Jackson*, unpublished order of the Court of Appeals, entered June 26, 2019 (Docket No. 344717).

hearing is warranted, we may consider evidence presented by defendant even if it is not part of the record. See *People v Moore*, 493 Mich 933, 933; 825 NW2d 580 (2013).

"[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). To establish that trial counsel was ineffective, a defendant must show that counsel's performance was objectively unreasonable and that counsel's deficient performance prejudiced the defense. *People v Payne*, 285 Mich App 181, 188-189; 774 NW2d 714 (2009). Prejudice exists when a defendant is able to show that, absent counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *Id*. at 189; see also *People v Matuszak*, 263 Mich App 42, 57-58; 687 NW2d 342 (2004). With regard to counsel's trial strategy, "this Court neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *Id*. at 58.

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004).

Defendant argues that his counsel failed to investigate or call Jackson to testify that he was in the basement with defendant before the incident, learning how to clean and care for firearms. Jackson stated in a sworn affidavit that he witnessed defendant "put his gun into a pocket holster and then in a front pocket of his pants" before going upstairs. We conclude that defendant has not demonstrated either that his counsel's performance was objectively unreasonable or that he was prejudiced by it.

Although Jackson allegedly witnessed defendant place the firearm into a pocket holster and then place that pocket holster and firearm into his front pocket, defendant testified that he had placed the firearm in his "waistband," without any mention of a pocket holster or a front pocket. Jackson's testimony therefore may have damaged defendant's credibility and undermined his self-defense claim, which relied heavily on the jury believing his version of events over the testimony of TJ and her daughter. Defendant has not established that it was objectively unreasonable for defense counsel not to call a witness whose testimony would contradict defendant's. See *Schrauben*, 314 Mich App at 190; *Russell*, 297 Mich App at 716.

Moreover, defendant has failed to establish the requisite prejudice to show ineffective assistance. At trial, both TJ and defendant testified about Jackson's presence in the home. This testimony included statements from defendant about teaching Jackson to clean and maintain a firearm. Although Jackson's testimony may have been consistent with defendant's in that regard and may have helped to show that defendant initially possessed the firearm for a legitimate reason, it would have done nothing to refute the testimony that defendant drew the firearm, pointed it at TJ, and threatened to shoot her. Indeed, Jackson's testimony would have been relatively tangential to the ultimate charge of assault because defendant easily could have formed the intent to assault TJ after the time that Jackson saw defendant with the firearm.

Additionally, trial counsel's decision not to call Jackson did not "undermine[] confidence in the trial's outcome." *Grant*, 470 Mich 477 at 493. Jackson's testimony at best would have provided an innocuous reason for why defendant was carrying a pistol in his own home; it would not have aided defendant in establishing that he had not pointed the pistol at TJ or threatened to shoot her. Defendant testified extensively about the incident and his belief that TJ had been the aggressor, argued that he acted in self-defense, and received the appropriate jury instruction. We conclude that the failure to call Jackson did not impair defendant's self-defense defense or otherwise deprive defendant of a substantial defense. See *Dixon*, 263 Mich App at 398. Defendant has therefore failed to demonstrate that he was deprived of the effective assistance of counsel.

## III. JURY VENIRE

Defendant also argues that the jury venire was constitutionally defective under the Sixth Amendment because it only contained a single African-American potential juror. We disagree.

> Whether defendant was denied his Sixth Amendment right to an impartial jury drawn from a fair cross section of the community is a constitutional question that we review de novo. We review the factual findings of a trial court for clear error, which exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake. [*People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012) (quotation marks and citation omitted).]

"The Sixth Amendment of the United States Constitution guarantees a defendant the right to be tried by an impartial jury drawn from a fair cross section of the community." *Id*. In order to establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [*Id*. at 597 (citation omitted).]

There is no dispute that African Americans are a distinct group in the community. See *People v Hubbard*, 217 Mich App 459, 473; 552 NW2d 493 (1996), overruled on other grounds by *People v Harris*, 495 Mich 120, 122; 845 NW2d 477 (2014). Therefore, the first prong for defendant's prima facie case was established.

However, defendant cannot establish the second prong, i.e., "that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community . . . ." *Bryant*, 491 Mich at 595 (citation omitted). This prong is not focused on the procedure used to select potential jurors or the makeup of a particular single venire; rather, "[b]ecause underrepresentation in a single venire could result from chance, evaluating whether representation of a distinct group is fair and reasonable requires evaluating venire composition over time." *Bryant*, 491 Mich at 602. In its ruling in this case, the trial court expressly addressed its experience with other jury venires in the county, explaining that it had "had many venires in [its] courtroom that [were] adequately represented." The trial court noted that

other jury venires in the county had better represented the diversity of the county, and that defendant had presented no evidence to the contrary. We hold that the trial court did not clearly err in its factual findings. See *Bryant*, 491 Mich at 595. Notwithstanding the underrepresentation in the current venire, representation in jury venires in the county over time was reasonably diverse. See *id*. at 602.

Even if defendant had established a pattern of underrepresentation, he failed to establish the third prong of the *Bryant* test, i.e., that the underrepresentation was the result of systematic exclusion. The trial court noted that the county's jury venire population base was comprised of "anyone who has a state ID or a Michigan driver's license." According to the trial court, this information was procured from the Secretary of State. Defendant presents no evidence indicating a "systematic" exclusion of African–Americans from the county jury pools. See *id*. at 615. Although defendant attempts to analogize this case to *Bryant*, the systematic exclusion in that case was the result of a programming error inherent in the computer program used to select potential jurors. *Id*. at 616. Defendant makes no allegation of a similar system error in this case and has failed to point to any other error in the juror selection process. We conclude that trial court did not err by finding that the third prong was not met.

In sum, defendant has failed to show that the particular makeup of the jury venire in this case occurred as a result of anything other than random chance, and the trial court properly denied defendant's objection to the venire. *Bryant*, 491 Mich at 602.

## IV. OTHER-ACTS EVIDENCE

Defendant argues that the trial court erred by allowing TJ to testify about defendant's history of abusing her, or in the alternative that his counsel was ineffective for failing to object to the admission of the testimony. We disagree. Because defendant did not object before the trial court, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to establish plain error, a defendant must establish (1) that an error occurred, (2) that it was plain, i.e., clear or obvious, and (3) that the plain error affected defendant's substantial rights by affecting the outcome of the proceedings. *Id.*

MCL 768.27b(1) provides for the admission of other-acts evidence relating to domestic violence or sexual assault "for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." MCL 768.27b(2) requires that the prosecution give notice to defendant of the evidence it intends to introduce under this statute "not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown." Defendant does not challenge whether the evidence was admissible under MCL 768.27b, but argues only that the prosecution failed to provide him with adequate pre-trial notice. We disagree.

As the prosecution notes, MCL 768.27b(2) does not expressly require notice by any particular method. Compare MCL 768.27(b)(2) (requiring notice) with MRE 404(b)(2) (requiring written notice or oral notice on the record). Defendant's appellate counsel has provided this Court with an affidavit stating that he had spoken with defendant's trial counsel, and that trial counsel indicated that he "believed that the prosecution had provided notice of [its] intent to introduce evidence of [defendant's] alleged abuse of [TJ], but [that] he could not recall." Although no written notice appears in the record, appellate counsel's affidavit suggests that the prosecution *did*

in fact provide notice to defense counsel in some fashion. This suggestion is bolstered by the fact that defense counsel appears to have been prepared to address the domestic violence issues at trial, and indeed effectively cross-examined TJ about prior instances of domestic violence during the marriage, including the fact that TJ had previously been convicted of domestic violence against defendant. We conclude that defendant has not shown that plain error stemming from a violation of the notice requirement of MCL 768.27b(2) occurred. See *Carines*, 460 Mich at 763.

Additionally, defendant has not shown that the alleged lack of notice was outcome-determinative. Defendant does not specifically explain how he would have proceeded differently, or how his defense was hampered by the alleged lack of notice. See *People v Jackson*, 498 Mich 246, 278-279; 869 NW2d 253 (2015) (finding no prejudice established from the lack of notice, when the defendant did not show how he would have approached the trial or presented his defense differently had the required notice been given, and when he did not identify or present offers of proof from any witnesses that he might have called with notice). Defense counsel's strategy was to employ defendant and TJ's history of violent altercations to support a claim that defendant had acted in self-defense. The record does not support the conclusion that defense counsel was somehow blindsided or lacked the time to prepare to address the issue of the parties' relationship history. Defendant has not demonstrated that the admission of this evidence, even if without proper notice, was outcome-determinative. *Carines*, 460 Mich at 763.

Similarly, defense counsel was not ineffective for failing to object to this testimony. Even assuming arguendo that defense counsel did not receive proper notice of the challenged testimony, defense counsel effectively used the history of domestic violence between defendant and TJ to support his defense theory. Again, defense counsel cross-examined TJ extensively about this history and used TJ's prior conviction of domestic violence against defendant to support his claim of self-defense. Although defense counsel's strategy ultimately failed, "[a] failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App, 412; 760 NW2d 882 (2008). Nor has defendant shown a reasonable likelihood that the outcome of the proceedings against him would have been different had his counsel objected to the admission of this testimony, especially considering that defense counsel affirmatively elicited similar testimony. *Payne*, 285 Mich App at 189.

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Mark T. Boonstra

-6-