*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
August 11, 2022

v

No. 351341
St. Clair Circuit Court
LC No. 18-001300-FH

JOSEPH GREG RAMIREZ,

      Defendant-Appellant.

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration of a person at least 13 years of age and under 16 years of age), three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b) (sexual contact with a person under 13 years of age), and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (sexual contact with a person at least 13 years of age but less than 16 years of age). He was sentenced as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 162 to 270 months for the CSC-II and CSC-III convictions, and two to three years for the CSC-IV conviction. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant was convicted of sexually assaulting the victim, the daughter of a longtime friend whom defendant had known since high school. The victim's mother testified that she and defendant were friends in high school in the 1990s and reconnected around 2014. Between 2014 through 2017, the victim's mother, the victim, and the victim's brother spent a lot of time at defendant's home. Defendant lived in the home with his then teenage daughter, AD, his girlfriend Melissa Finn, and his toddler daughter with Finn. The two families became friends. During this time, the victim's mother had several different jobs, some of which were second or third-shift jobs. While the victim's mother was working, Finn was paid to babysit the victim and the victim's brother at defendant's home. In January 2018, the victim revealed to a teacher at school, and later in a forensic interview, that from 2014 to 2017, defendant forced the victim to touch his penis, constantly grabbed and squeezed her butt, inserted his finger into her vagina, touched her chest

under her shirt, and kissed her with an open mouth. The victim never told anyone because defendant threatened to hurt her family if she did.

MS testified[1] that she went to middle school with defendant's daughter, SH, and they were friends. MS had a profile on Myspace and may have misrepresented her age. Through the website and by phone, defendant contacted MS and made inappropriate sexual comments to her. MS testified that when SH invited her to spend the night at defendant's home, he had grabbed her butt with two hands and then hugged her from behind with his arms crossed over her chest. Because defendant knew that MS was SH's friend from middle school, MS opined that he was aware that she was not 21 years old. MS did not report the incident because she wanted to continue her friendship with SH. However, MS's sister learned of the Myspace messages and reported them to their mother. As a result, MS and her mother were interviewed by the police.

The prosecution also presented evidence that defendant came to the store where the victim's mother worked, made inquiries about her employment there, and made a veiled threat. The employee working at the time notified the victim's mother, and the video of the incident was played for the jury. As a result of the incident, the victim's mother moved her family for safety reasons.

Defendant and Finn testified that they lived in the home with their toddler daughter and AD. The victim and her brother were present at the home three to four times a week while their mother worked. Because the victim's brother had special needs and dietary restrictions, he slept in the room with their toddler with a noise maker. The victim slept on a couch in the living room with AD. Because Finn and AD were not working, someone was always present in the home with the victim. Finn and AD never witnessed any inappropriate contact between the victim and defendant, and their relationship was characterized as one of father and daughter. Additionally, defendant testified that he never inappropriately touched the victim. He was never convicted of an offense pertaining to MS. Defendant testified that the family stopped babysitting after the victim's brother inadvertently struck Finn while she was pregnant with their son. Defendant learned of the allegations by the victim when protective service workers arrived at his home. He admitted that he went to the mother's place of employment but asserted that he was only venting to the employee, the spouse of his cousin, and did not make a threat. Nonetheless, the jury convicted defendant as charged.

Defendant moved for a new trial on the ground that defense counsel was ineffective and the trial court held a *Ginther*[2] hearing. Defendant, AD, SH, and defendant's trial counsel testified at the hearing. Trial counsel had difficulty recalling specifics about his preparation and the trial because it had occurred over three years earlier. However, trial counsel noted that he had to carefully present the case to avoid appearing to attack the youthful victim in front of the jury. He opined that his trial strategy was to attack the lack of a timeline of the incidents and the inconsistent accounts during the victim's testimony. Additionally, he submitted that reasonable doubt existed in light of the lack of corroboration when other family members were always present in the home.

---

[1] Defendant's counsel moved to have this other acts evidence excluded, but the motion was denied.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Trial counsel declined to object to the prosecutor's closing argument. In his lengthy career, he had objected to argument less than five times, noting that the argument was not evidence, the jury was instructed accordingly, and the jury's focus was on the admitted evidence. Trial counsel did not recall or did not have notes in his file of defendant's desire for counsel to call neighbors and to present a motive for the victim to lie. Moreover, trial counsel questioned the existence of such a motive to lie by the victim or being coached to lie by her mother.

Defendant testified that there was a time when his relationship with Finn ended. He then began a "friends with benefits" arrangement with the victim's mother. He reunited with Finn and ended the sexual trysts with the victim's mother. After that, the victim's mother would drop the children off but not visit. Additionally, defendant received complaints from AD and his neighbors that the victim was lying and stealing. Defendant told the victim that she could not come over anymore as a result. He also apprised trial counsel that the victim stole something from the mall and was in trouble at school. AD corroborated defendant's testimony that the victim was lying and stealing. And, SH challenged MS's testimony regarding the inappropriate touching. After the hearing, the trial court denied defendant's motion for new trial.

## II. PROSECUTORIAL MISCONDUCT

Defendant first alleges that he was denied a fair trial because the prosecutor argued facts not in evidence and appealed to the jury's sympathy and civic duties. We disagree.

A defendant must preserve issues of prosecutorial misconduct by "contemporaneous objections and requests for curative instructions." *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020). Defendant did not object to the challenged remarks at trial or request a curative instruction. Therefore, this issue is unpreserved. This Court reviews unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *Id.* In order to avoid forfeiture of an unpreserved claim, a defendant must demonstrate a plain error that was outcome-determinative. *Id.* at 88-89. This Court will reverse only if it determines that, although defendant was actually innocent, the plain error caused him to be convicted, or the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings," regardless of his innocence. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). This Court will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured with a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Defendant submits that the following statements by the prosecutor during rebuttal argument appealed to the jury to sympathize with the victim, encouraged the jury to convict him as part of its civic duty, and argued facts that were not before the jury:

> When you're going back there and returning your true verdict you need to think about that little girl (indicating). You need to think about that girl (indicating) with those little girls in time. And then think about this. And I don't know what it is. I don't know what it is. I would argue to you for some reason juries when they go back and deliberate have a difficult time believing teenage girls. I don't know what it is. I don't know if it's, it's something about the way our culture is our society is, but I would argue to you that for some reason a teenage girl gets testifying and people think, oh, teenage girls. How, how many times have you

heard that? Oh, she's a teenage girl. Oh, you got a teen, oh, how – tell me how bad is it, right? That's what culture and society is saying over and over again. They don't say that about boys, they say that about girls . . . .

\* \* \*

Now you have to go run a race back there. You're going to have to deal with this. And I would argue to you that at some point in the future if she's lucky enough she's going to have a family of her own, maybe she doesn't want one, but if she wants to maybe she'll be lucky and have a child and I would suspect if she's going to have a child she's going to probably one day tell her child about the experiences that she went through. To protect her. To teach her. To teach her to stand up for herself and she's going to tell her daughter or so about the experiences that she went through here and that story's going to have one of two endings. She's going to tell that child that the jury didn't believe me or she's going to say the jury did believe me.

Ladies and gentlemen, she should be allowed to tell that child that they did, you did believe her because she is believable. She told the truth. Believe her.

Prosecutors generally are free to argue the evidence and all reasonable inferences arising from the evidence as it relates to their theory of the case. *People v Bailey*, 310 Mich App 703, 722; 873 NW2d 855 (2015). A prosecutor may not inject issues into a trial that are broader than the defendant's guilt or innocence. *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014). A prosecutor commits misconduct when he or she asks jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty. *Id*.

We reject defendant's contention that the prosecutor's comments regarding teenage girls was not supported by the evidence introduced at trial and represented an improper civic duty argument. A review of the prosecutor's statements reveals that the prosecutor did not inject issues into the trial broader than defendant's guilt or innocence. Rather, the prosecutor asked the jury to give the victim, a young teenage girl, the same consideration they would give any other victim. The prosecutor did not ask the jury to give up its sense of judgment and find defendant guilty on the basis of civic duty or sympathy.

Additionally, the prosecutor properly argued that the victim's experiences would shape her future behavior. However, the prosecutor's submission that the jury should ensure that the victim would have the ability to tell her future children that the jury believed her because she told the truth "invite[d] [the] jurors to suspend their powers of judgment and decide the case on the basis of sympathy." *Lane*, 308 Mich App at 66. Although this sentiment was unnecessary and improper, relief is not warranted because it could have been addressed with a curative instruction upon objection, and in fact, was addressed by the court's jury instructions. *Watson*, 245 Mich App at 586. Following the prosecutor's rebuttal argument, the trial court commenced its instructions by advising the jury to: "Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law. You must not let sympathy or prejudice influence your decision." The trial court also instructed the jury that "[t]he lawyers['] statements and arguments are not evidence" and "[y]ou should accept only things lawyers say that are supported by the evidence or by your own common sense and general knowledge." Jurors are

-4-

presumed to follow their instructions. *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). These instructions were sufficient to cure any potential prejudicial effect arising from the prosecutor's statements and to protect defendant's substantial rights. Accordingly, defendant has failed to establish plain error affecting his substantial rights.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that the trial court erred by finding that he was afforded his constitutional right to the effective assistance of counsel. We disagree.

Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A court must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel. *People v Grant*, 470 Mich 477, 484-485; 684 NW2d 686 (2004). This Court reviews a trial court's findings of fact for clear error. *Id*. at 485. Questions of constitutional law are reviewed de novo. *Id.*

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 U S 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In order to establish ineffective assistance of counsel, a defendant must show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. *People v Randolph*, 502 Mich 1, 7; 917 NW2d 249 (2018). In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was premised on a sound trial strategy. *Trakhtenberg*, 493 Mich at 52. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Randolph*, 502 Mich at 7.

The trial court granted defendant's request for a *Ginther* hearing on his ineffective-assistance-of-counsel claim. The purpose of the hearing was to allow defendant to establish "a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately." *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

Defendant's first claim of ineffective assistance of counsel is based on the claims of prosecutorial misconduct raised in Issue I. The trial court found that the prosecutor's statements in his rebuttal argument did not rise to the level of misconduct, and that "any arguably questionable statements were cured by the [c]ourt's final instructions." The trial court also found that defense counsel's failure to object to the comments was a matter of trial strategy. As such, the trial court did not find that defendant had been denied the effective assistance of counsel with respect to this claim.

Indeed, the prosecutor's general comments were not improper, except for the comment that the jury should ensure that the victim could tell her future children that it believed her because she told the truth. However, defendant has failed to overcome the presumption that counsel's decision not to object was a matter of trial strategy. Further, he has not demonstrated that he was prejudiced by counsel's failure to object.

Defendant submits that the trial court erred by concluding that defense counsel made a legitimate strategic decision to not object to the prosecutor's comments. Defendant asserts that counsel testified that he could not remember why he did not object, and therefore, the testimony does not support that he made a conscious strategic decision. At the *Ginther* hearing, defense counsel testified at length that he normally does not object during closing arguments, especially in a case like this one. Counsel testified that if a comment was "out of line" he might object, but he did not believe that the prosecutor's comments in this case rose to that level. Counsel did not believe that the prosecutor said anything "incredibly offensive or harmful." Counsel also pointed out that the trial court "clearly instructs jurors that what the lawyers say is argument it's not evidence." Declining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). This Court will not substitute its judgment for that of counsel on matters of trial strategy. *Id.* at 242-243. Accordingly, the trial court did not clearly err by finding that counsel's failure to object to the prosecutor's comments was premised on a sound trial strategy. *Trakhtenberg*, 493 Mich at 52. Furthermore, to the extent that the prosecutor's remarks could be considered improper, the trial court's jury instructions were sufficient to cure any prejudicial effect caused by the statements. Therefore, defendant was not prejudiced by counsel's failure to object.

In essence, defendant's next three challenges to counsel's performance raise a failure to perform any independent investigation of this case. Defendant claims that counsel never contacted his niece. Trial counsel testified that he had written in his notes that the niece would have testified that she never saw any inappropriate behavior on defendant's part toward the victim, which would have been cumulative of other evidence. Moreover, defendant did not offer any evidence as to how his niece actually would have testified or how he was prejudiced by counsel's failure to call her as a witness. Therefore, defendant failed to carry his burden to produce factual support for this claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant also contends that counsel was ineffective for failing to reach out and interview another witness, who also was present the night defendant grabbed MS. However, defendant did not offer any evidence of this witness's potential testimony, and he does not explain how he was prejudiced by her absence.

Defendant asserts that counsel's representation was deficient because he decided not to investigate and call SH as a witness without ever contacting her to determine what her testimony might have been. Failure to make an adequate investigation can be ineffective assistance of counsel if it undermines confidence in the trial's outcome. *Grant*, 470 Mich at 493.

Although counsel did not consult with SH before he decided not to call her as a witness, defendant has not offered any evidence of what her testimony would have been. A police detective wrote in his police report that he spoke to SH on March 19, 2018. She told him that defendant had chased MS around the house and texted her. AD testified that SH told her about MS's allegations back in 2010, but AD did not believe her. It is defendant's burden to produce factual support for his claim of ineffective assistance of counsel, *Hoag*, 460 Mich at 6, and defendant did not meet that burden. Defendant may be correct that counsel should have contacted his niece, MS's friend, and SD before deciding not to call them as witnesses. However, defendant failed to establish the second prong of the test of ineffective assistance that counsel's failure to speak to these potential

witnesses before trial prejudiced defendant or undermined confidence in the trial's outcome. *Grant*, 470 Mich at 493.

The remainder of defendant's arguments center around counsel's failure to pursue testimony and evidence that would have supported defendant's theory that the victim had motive to lie about the allegations. Both defendant and AD testified at the *Ginther* hearing that the reason that defendant asked the victim to stop coming to their house was that the victim was stealing from AD and neighbors. Defendant theorized that the victim made up the allegations against him because she was angry after he banned her from his house. Defendant and AD both testified that they gave the names and contact information for all of the neighbors to defense counsel. Counsel testified that he did not have a name or phone number for any of defendant's neighbors in his notes. The trial court found that defendant's testimony lacked credibility and he failed to present any evidentiary support for the neighbors' testimony to support his claims.

Defendant's testimony at trial conflicts with his theory and testimony at the *Ginther* hearing. At trial, defense counsel asked defendant if there was a time when the victim and her brother stopped visiting defendant's home. Defendant answered that they stopped visiting his home in August 2017. When asked the reason, defendant stated:

> Well [the victim's brother] accidentally, or [the victim's brother] accidentally almost hit [Finn] in her stomach and we got scared of him accidentally kicking her or doing something because of the way he is. I mean, he wouldn't have meant it, but we were frightened because of the problems she had. So, we didn't want, you know, to keep on going, you know.

Defendant told the victim's mother about his decision and she was not happy, but he felt that with Finn's medical problems with her pregnancy, it was the best decision.

Counsel asked defendant an open-ended question that provided him with the opportunity to explain why the victim stopped visiting defendant's home. Defendant did not testify that he asked the victim to stop coming over because of any lying or stealing incidents. Rather, defendant testified that he asked the victim to stop coming over because he was concerned about her brother being around a pregnant Finn.

Similarly, AD was asked at trial about her relationship with the victim and she indicated that they were like sisters. AD never mentioned that the victim had been stealing from her or that she asked defendant to tell the victim that she could not come to their house anymore.

At the *Ginther* hearing and on appeal, defendant claimed that the victim was no longer welcome at any of the neighbors' homes because she stole from them and lied to them. Defendant claimed that he asked the victim to stay away from his home because he did not want to deal with the neighborhood drama. Defendant stated that this request caused the victim to become angry and fabricate the allegations as revenge. However, defendant did not testify regarding any of those events at trial, despite the opportunity to do so. More importantly, he did not present any evidence in the form of affidavits or testimony from his neighbors to support his contention that they would have testified that the victim stole from them and lied to them. Neither he nor AD offered any testimony regarding specific instances or items that had been stolen or specific instances of

untruthfulness to bolster his claims. Considering this lack of evidence along with defendant's and AD's contradictory testimony at trial, the trial court did not clearly err by concluding that counsel's failure to call these witnesses or follow this line of argument did not deprive defendant of the effective assistance of counsel. Defendant has not shown that counsel's performance was objectively deficient, or that any deficiencies prejudiced defendant.

Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica